## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EDIN PORTELA-HERNANDEZ,

    Petitioner,

v.

DONALD J. TRUMP ET AL.,

    Respondents.

    Civil No. 25-1633-BAH

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Petitioner Edin Portela-Hernandez ("Portela-Hernandez" or "Petitioner") brought this habeas action pursuant to 28 U.S.C. § 2241 against Respondents Donald J. Trump (in his official capacity as President of the United States), Matthew Ellison (in his official capacity as the Baltimore Field Office Director for Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO")),[1] Todd Lyons (in his official capacity as Acting Director of ICE-ERO), Kristi Noem (in her official capacity as the Secretary of the Department of Homeland Security ("DHS")), and Pamela Bondi (in her official capacity as the Attorney General of the United States) (collectively "Respondents" or "the Government"). *See* ECF 1 (original petition/complaint); ECF 20 (corrected amended petition/complaint); ECF 39 (second corrected

---

[1] The Court takes judicial notice that Matthew Elliston (not "Ellison," which the Court assumes to be a typographical error) was formerly the Baltimore Field Office Director and is now a deputy assistant director of field operations for ICE. *See* Cale Ahearn, *Former Baltimore ICE field office director promoted to Washington*, FOX45 News (Mar. 28, 2025), https://foxbaltimore.com/news/local/matthew-elliston-baltimore-ice-field-office-director-promoted-to-washington. The current Baltimore Acting Field Office Director is Vernon Liggins. Pursuant to Fed. R. Civ. P. 25(d), Vernon Liggins will be substituted for "Matthew Ellison" in his official capacity as Acting Field Office Director for Baltimore ICE-ERO.

amended petition/complaint). Pending before the Court are Portela-Hernandez's second amended complaint and petition for writ of habeas corpus, ECF 39 (hereinafter the "petition"), and Respondents' motion to dismiss the petition, which is also styled as a response in opposition to the petition, ECF 40 (hereinafter the "motion to dismiss").[2] For the reasons stated below, the petition will be **GRANTED** and Respondents' motion to dismiss **DENIED**.

## I.     FACTUAL BACKGROUND

Portela-Hernandez is a 44-year-old citizen and national of Guatemala who came to the United States in 1999. *See* ECF-39, at 2 ¶ 4. On February 28, 2020, an immigration judge issued an order of removal to Guatemala and simultaneously granted Portela-Hernandez withholding of removal to Guatemala.[3] *Id.* at 1 ¶ 1; *see also* ECF 1-3 (order of the immigration judge). Portela-Hernandez runs a roofing business out of Salisbury, Maryland, with his spouse. ECF 39, at 2 ¶ 8, at 3 ¶ 11. He asserts that his criminal record consists only of "three traffic citations, two for driving

---

[2] Portela-Hernandez filed the original petition on May 21, 2025. *See* ECF 1. He attempted to file an amended petition on May 25, 2025, ECF 13, but it was marked as "filed in error" by the Clerk's office for failure to attach a redline copy, *see* ECF 14 (quality control notice). Respondents still timely filed their motion to dismiss in response to the "filed in error" amended petition. ECF 15. The corrected amended petition was filed *after* the motion to dismiss. *See* ECF 20. At an evidentiary hearing held on November 7, 2025, the parties and the Court learned of new facts impacting the habeas request, so the Court invited Portela-Hernandez to "file any motion, supplement, or other paper" in response to the newly learned information. *See* ECF 35. Portela-Hernandez filed another amended petition/complaint, which was rejected for failure to file a redline copy, ECF 36, and a subsequent corrected second amended petition/complaint, ECF 39. The Government responded with a motion to dismiss. ECF 40. The amended petition supersedes any earlier filed petition, *see Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001), thus mooting the prior filed motion to dismiss. However, the Court refers to the earlier filed petition and motion to dismiss to the extent they are relevant and to contextualize the live claims and arguments. While the Government refers to this petition as the third amended petition, *see* ECF 40, at 1, it is really the second amended petition, not including the amended petitions rejected because Portela-Hernandez failed to file redline copies.

[3] Portela-Hernandez's counsel also represented him in the removal proceedings between 2017 and 2020. During those proceedings, Portela-Hernandez had been released on bond. *See* ECF 39, at 5 ¶ 22.

without a license in 2011 and 2013, and a speeding ticket from 2022. He also was arrested on suspicion of assault, but he was acquitted." *Id.* at 2 ¶ 8; *see also* ECF 1-4.

Portela-Hernandez "reported for a customary and routine ICE check-in on May 20, 2025," and was detained. ECF 39, at 3 ¶ 9. The next day, Portela-Hernandez was served with a notice reflecting the Government's intention to remove him to Mexico. *Id.*; *see also* ECF 15-1 (notice of removal in English and Spanish attached to Government's first motion to dismiss). A "Notice of Revocation of Release" was also provided to Portela-Hernandez at the time of his detention on May 20, 2025, and stated the following:

> ICE has determined that you can expeditiously be removed from the United States pursuant to the outstanding order of removal against you. On February 28, 2020, your application for withholding was granted by an immigration judge. You are subject to an administratively final order of removal. Your case is under current review by the Government of Mexico for issuance of a travel document.

ECF 15-2, at 1. The notice also explained that Portela-Hernandez's "order of supervision has been revoked . . . based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case." *Id.* The notice concluded that "pursuant to 8 C.F.R. § 241.4 / § 241.13," Portela-Hernandez is "to remain in ICE custody at this time." *Id.*

Portela-Hernandez's counsel represents that he demanded his client be afforded a reasonable fear interview ("RFI") related to the third country removal to Mexico in May and that Portela-Hernandez himself had "demanded an RFI multiple times." ECF 39, at 3 ¶¶ 12–13. Portela-Hernandez asserts that he "described being kidnapped and sexually assaulted by multiple men in Mexico while en route to the United States in 1999" in his asylum/withholding of removal application (I-589), submitted during the prior removal proceedings. *Id.* at 2 ¶ 6. As of May 25, 2025, Portela-Hernandez had been transferred to the Winn Correctional Center in Winnfield, Louisiana. *See* ECF 20, at 3 ¶ 11.

## II.    **PROCEDURAL HISTORY**

On May 21, 2025, Portela-Hernandez filed his petition for writ of habeas corpus and complaint. ECF 1. The Court, pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a) and Standing Order 2025-01, ordered that Respondents "are enjoined and restrained from removing Petitioner from the continental United States or altering his legal status."[4] *See* ECF 5. This order, a version of which is entered upon the "filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on behalf of an alien detainee" in every case in the District of Maryland,[5] expired at 4:00 p.m. "on the second business day following the filing of the [habeas petition]." *Id.* at 1–2. The Court held a teleconference on May 22, 2025, at which counsel for Portela-Hernandez and Respondents were present. *See* ECF 9. Following that call and after the input of the parties, the Court entered a new order extending the relief entered at ECF 5 which prevented Respondents from removing Petitioner from the United States (or altering his legal status) "until further order of this Court." ECF 10, at 1.

Portela-Hernandez then filed an amended petition for writ of habeas corpus and complaint. *See* ECF 13 (filed May 25, 2025 and marked "filed in error"); ECF 20 (corrected amended petition/complaint). Respondents filed a response and a motion to dismiss or stay the action on the grounds that Portela-Hernandez is a member of the non-opt-out class in *D.V.D. v. DHS*, Civ. No. 25-10676-BEM, currently pending in the District of Massachusetts. *See* ECF 15. Portela-Hernandez opposed the motion, ECF 19, and Respondents filed a reply, ECF 22.

---

[4] The Court denied Portela-Hernandez's emergency motion for a temporary restraining order, ECF 4, as moot. *See* ECF 10.

[5] On December 1, 2025, the Court issued a Second Amended Standing Order 2025-01.

On July 24, 2025, the Court held a hearing on the petition and motion to dismiss. *See* ECF 23. When asked by the Court to explain "what is being done with respect to the removal," the Government represented that it had "requested travel documents from Mexico." ECF 25, at 5:17–18, 21. After a back-and-forth with the Court aimed at clarifying the foreseeability of removal, the Government again reiterated that "something is happening" to effectuate Portela-Hernandez's transfer to Mexico. *Id.* at 6:19–20. The Court later pressed the Government to explain why Portela-Hernandez, who had been living in the United States for decades and built a successful business, was suddenly detained. *Id.* at 12:1–6. The colloquy that ensued again reflected efforts to remove Portela-Hernandez:

> THE COURT: Because that's what I'm getting at. It [the Notice of Revocation] just says there's been a change. What is it?
>
> [GOVERNMENT COUNSEL]: That he can be removed.
>
> THE COURT: Okay. But he -- and the changed circumstance is he can be removed because Mexico will take him?
>
> [GOVERNMENT COUNSEL]: That is what's going to happen, yes.

*Id.* at 12:18–23.

After the hearing, the Court permitted supplemental briefing and directed a status update be filed "after the anticipated August 14, 2025 custody review." ECF 24. That jointly filed report indicates that Portela-Hernandez received a custody review and remained in detention (though counsel admit that some of the circumstances regarding the custody review were "unclear") and that Portela-Hernandez had not yet received a reasonable fear interview. ECF 29. On October 3, 2025, the Court ordered the parties to file another joint status report "including (1) whether Petitioner has received a reasonable fear interview and (2) the steps the Government has taken in

5

pursuit of removing Petitioner to Mexico since the last status update." ECF 30. The parties did

so and stated:

> 1. Petitioner has not received a reasonable fear interview. ICE has made the referral to [U.S. Citizenship and Immigration Services ("USCIS")] to conduct a reasonable fear interview. That interview is currently being scheduled. However, neither Petitioner nor Petitioner's counsel have received any notification or other indication of same from either USCIS or ICE.
>
> 2. Respondents have not taken any steps to remove Petitioner to Mexico because the Court has extended the Amended Standing Order enjoining the Respondents from removing the Petitioner from the United States until further order of the Court. [ECF 10].

ECF 31, at 1. The Court then set an evidentiary hearing for November 7, 2025. *See* ECFs 32 and

33. At that hearing, Melanie White, the Assistant Field Office Director for Baltimore ICE, testified

that Portela-Hernandez had a third country screening interview that very morning, and, while in

the hearing, she had received confirmation from a coworker that his fear determination was

negative.[6] *See* ECF 40-1 (negative third country screening notice). After the hearing, given the

change in facts that had occurred that same morning, the Court invited Petitioner's counsel to "file

any motion, supplement, or other paper" to account for the changed circumstances and set a

briefing schedule. *See* ECF 35. Portela-Hernandez filed an amended petition asserting four

claims:

> First Claim: "Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution";
>
> Second Claim: "Release on Bail Pending Adjudication";
>
> Third Claim: "Violation of Non-Refoulement Obligations"; and
>
> Fourth Claim: "Due Process Violations in Re-Detention and Third-Country Screening."

---

[6] There was some confusion at the hearing over whether the screening occurred on November 6 or November 7. The third country screening notice is dated November 7. *See* ECF 40-1.

ECF 39, at 8–15. The Government filed a motion to dismiss in response. ECF 40. The Government argues that Portela-Hernandez's detention is constitutionally permissible under Supreme Court and Fourth Circuit law, that he is not entitled to bail proceedings, that potential refoulment does not bear on the lawfulness of his detention, and that he has received constitutionally adequate process before being removed to a third country in accordance with March 30, 2025 Guidance issued by Secretary Noem. *See id.* at 2–14.

## III.    LEGAL STANDARD

A detainee may file for a writ of habeas corpus if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV.    DISCUSSION

### A. Jurisdictional Bars

The Court begins with the preliminary question of jurisdiction, which was argued in connection with the first amended petition and motion to dismiss. *See* ECFs 15 and 20. The Government argues that "to the extent Petitioner seeks an order staying ICE's effectuation of Petitioner's removal order, this Court is without jurisdiction to offer such relief." ECF 15, at 12 (citing 8 U.S.C. § 1252(g)). The jurisdictional bar the Government cites—§ 1252(g)—does not preclude this Court's review of a habeas petition brought under § 2241. *Zadvydas v. Davis*, 533 U.S. 688 (2001); *see also Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *7 (4th Cir. July 1, 2025) ("Because § 1252(g) simply doesn't extend to habeas challenges to present immigration confinement, courts routinely exercise jurisdiction over such challenges.").

The Government also makes cursory reference to §§ 1252(a)(5) and (b)(9). *See* ECF 15, at 14. These jurisdictional arguments are not raised in the motion to dismiss the second amended petition. *See generally* ECF 40. Nevertheless, the Court will address these statutes as they pose

potential jurisdictional bars to hearing Portela-Hernandez's claims. Section 1252(a)(5) directs that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of [the INA]." Section 1252(b)(9) consolidates judicial review of removal proceedings into one proceeding: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 230 (2020) ("We have explained that Congress intended the zipper clause [§ 1252(b)(9)] to 'consolidate judicial review of immigration proceedings into one action in the court of appeals.'" (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001))).

The Court here does not evaluate the removal order or its underlying questions of law or fact. The Court considers only whether Portela-Hernandez's detention—even if it is pursuant to a removal order—is lawful. The Ninth Circuit has recently held that neither §§ 1252(a)(5) nor (b)(9) applied to a Federal Tort Claims Act claim brought by a Cuban plaintiff who had won withholding of removal to Cuba but was removed to Mexico despite raising fear to immigration officials. *Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025). Because his claims "arose after completion of his removal proceedings," he could not have challenged the decision to remove him to Mexico "through the normal petition-for-review process" as he "obvious[ly] . . . could not seek review of a decision that had not been made." *Id.* District courts have similarly held that these sections do not apply where, as here, the decision to remove a noncitizen to a country not previously designated as a country of removal arose after prior removal proceedings had ended. *See Cruz Medina v. Noem*, Civ. No. 25-1768-ABA, --- F. Supp. 3d ---, 2025 WL 2841488, at *3

(D. Md. Oct. 7, 2025) (*Cruz Medina II*); *Sagastizado v. Noem*, No. 5:25-CV-00104, --- F. Supp.

3d ---, 2025 WL 2957002, at *6 (S.D. Tex. Oct. 2, 2025) (*Sagastizado I*) (citing *Nielsen v. Preap*,

586 U.S. 392, 402 (2019)).

Thus, § 1252 does not bar review of the merits of Portela-Hernandez's habeas claim.

**B. Merits of Portela-Hernandez's Habeas Petition**

1. *Zadvydas* and the Statutory/Regulatory Framework for Post-Removal Order Detention

Typically, when a noncitizen is ordered removed, "the Attorney General shall remove the

alien from the United States within a period of 90 days"—this period is often called the removal

period.[7] 8 U.S.C. § 1231(a)(1)(A). As relevant here, the removal period typically begins to run

when an order of removal becomes final or when all appeals (coupled with a stay of removal by

the reviewing court) are exhausted. *Id.* § (a)(1)(B). Detention is mandatory during the 90-day

removal period. *Id.* § (a)(2)(A) ("During the removal period, the Attorney General shall detain the

alien. Under no circumstance during the removal period shall the Attorney General release an

alien who has been found inadmissible under section 1182(a)(2) . . . ."). If the noncitizen is not

removed upon the termination of the removal period, the noncitizen, "pending removal, shall be

subject to supervision" pursuant to federal regulations. *Id.* § (a)(3). Continued detention and

supervision of inadmissible noncitizens beyond the removal period is governed by 8 C.F.R.

§ 241.4. "The removal period shall be extended beyond a period of 90 days and the alien may

remain in detention during such extended period if the alien fails or refuses to make timely

application in good faith for travel or other documents necessary to the alien's departure or

---

[7] When DHS replaced the Immigration and Naturalization Service in 2002, much of the authority the INA conferred on the Attorney General concerning removal operations transferred to the Secretary of DHS. *See Clark v. Martinez*, 543 U.S. 371, 375 n.1 (2005). However, "the Attorney General [still] retains the authority to administer removal proceedings and decide relevant questions of law." *Preap*, 586 U.S. at 398 n.2 (citations omitted).

conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

Further, an inadmissible noncitizen with an order of removal "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § (a)(6). "No alien ordered removed shall be eligible to receive authorization to be employed in the United States unless the Attorney General makes a specific finding that" either: "the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien," or "the removal of the alien is otherwise impracticable or contrary to the public interest." *Id.* § (a)(7).

8 U.S.C. § 1231(b)(3)(A) provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." "Similarly, under [the Foreign Affairs Reform and Restructuring Act of 1998] which codified [Convention Against Torture] protections, an alien may not be removed to any country where they would be tortured." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. Apr. 18, 2025). If a noncitizen "can establish a 'clear probability' that he would be persecuted or that he would 'more likely than not' be tortured, then relief is mandatory and the government must withhold removal to the country in question." *Tomas-Ramos v. Garland*, 24 F.4th 973, 977 (4th Cir. 2022) (quoting *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018)). "Two identical sets of regulations govern the reasonable fear determination process, 8 C.F.R. §§ 208.31 and 1208.31, promulgated by the Department of Homeland Security and the Executive Office for Immigration Review, respectively." *Id.* at 977 n.1. Both sets of regulations apply to "aliens ordered removed under [8 U.S.C. § 1228(b), which governs expedited

10

removal of aliens convicted of committing aggravated felonies] and aliens whose removal is reinstated under [8 U.S.C. § 1231(a)(5)]." 8 C.F.R. §§ 208.31, 1208.31.

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-order detention statute, § 1231(a)(6), while providing wide latitude to the Executive's detention authority, is still subject to constitutional due process considerations. 533 U.S. at 688, 699. "Due to the 'serious constitutional concerns' that would arise if § 1231 were interpreted to authorize 'indefinite detention,' the Supreme Court in *Zadvydas* 'construe[d] the statute to contain an implicit "reasonable time" limitation, the application of which is subject to federal-court review.'" *Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024) (quoting *Zadvydas*, 533 U.S. at 682).

In *Zadvydas*, two noncitizens who were subject to removal orders, Kestutis Zadvydas and Kim Ho Ma, challenged their post-removal-order detention. *See* 533 U.S. at 684–86. Zadvydas, born in Germany in a displaced persons camp to Lithuanian parents, came to the United States when he was eight. *Zadvydas*, 533 U.S. at 684. He accrued a lengthy criminal history, and he was ordered removed to Germany in 1994. *Id.* However, Germany refused to accept him, as did Lithuania and the Dominican Republic. *Id.* In September 1995, Zadvydas was still in custody of the Immigration and Naturalization Service ("INS"), predecessor to DHS, with its subagencies ICE and USCIS, despite the expiration of the 90-day removal period, at which point he filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Id.* at 684–85; *see also* 8 C.F.R. § 241.4(g)(1)(ii) ("The removal period shall run for a period of 90 days."). The district court ordered Zadvydas released, finding that "the Government would never succeed in its efforts to remove Zadvydas from the United States," but the Fifth Circuit reversed, concluding that "eventual deportation was not 'impossible,' good-faith efforts to remove him from the United States

continued, and his detention was subject to periodic administrative review." *Zadvydas*, 533 U.S. at 685.

Ma, born in Cambodia in 1977, came to the United States when he was seven. *Id.* He was convicted of an aggravated felony (manslaughter) in 1995 and subsequently ordered removed. *See id.* "The 90–day removal period expired in early 1999, but the INS continued to keep Ma in custody," so Ma filed a habeas petition in that same year.[8] *Id.* The district court ordered his release, and the Ninth Circuit affirmed, reasoning that "the statute did not authorize detention for more than a 'reasonable time' beyond the 90–day period authorized for removal[, a]nd, given the lack of a repatriation agreement with Cambodia, that time had expired upon passage of the 90 days." *Id.* at 686 (citations omitted).

After "conclud[ing] that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" despite various jurisdiction-stripping provisions of the INA, the Court turned to the question of whether Zadvydas' and Ma's detention offended due process. *See id.* at 688. In doing so, the Supreme Court described the task for the habeas court as follows:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

---

[8] *Zadvydas* does not make clear how long Ma was detained before he filed his habeas petition.

*Id.* at 699–700 (citation omitted). At the same time, the habeas court "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive [Department of Homeland Security] efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

After balancing these concerns, the Supreme Court announced a "presumptively reasonable" period of six months of detention. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

2. Interpretations of *Zadvydas*

While *Zadvydas* at first blush may seem to conclusively foreclose a habeas petition filed by a petitioner who has been detained for less than six months, the factual distinctions between *Zadvydas* and those here make clear that *Zadvydas* leaves open the question of whether Portela-Hernandez's detention comports with due process.[9] Most significantly, Portela-Hernandez was

---

[9] The Court recognizes that it has expressly enjoined Portela-Hernandez's removal during the pendency of this litigation (absent further order of the Court), ECFs 10 and 35, which has lasted over six months now as the factual record has developed and changed, requiring further briefing. This injunction, however, has not affected the Government's ability to take steps towards effectuation of removal (but short of actual removal). Indeed, the Government noted at the last hearing that it had afforded Petitioner a "third country screening" despite the Court's order, which even the Government concedes is a necessary step in the process of seeking to remove Petitioner. *See, infra,* n.12. The Court also notes that because it finds the *Zadvydas* presumption rebuttable, the reasoning herein would be on equal footing even months earlier in Portela-Hernandez's

released on supervision at the time immigration authorities issued his initial order of removal (and the order withholding that removal), and he was never detained during the removal period. *See* ECF 39, at 5 ¶ 22. His detention has not been continuous, and he was not detained during the 90-day removal period as the *Zadvydas* petitioners were. *Zadvydas*, then, does not necessarily establish when the six-month period begins to run in cases like Portela-Hernandez's. As Judge Chuang recently explained:

> This distinction is significant because *Zadvydas* appears to have sought to balance the length of time a noncitizen would be held in detention against the need to afford the Government some time immediately following the issuance of the removal order to make and execute arrangements for removal. Because some if not most of those arrangements, such as securing approval from a foreign country to remove an individual to that nation, can likely be pursued even while the noncitizen is on release, that balance may well differ in circumstances where, before the period of detention began, the Government had a period of time—indeed, in this case, over 17 years—to make the arrangements for removal. Thus, there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period.

*Zavvar v. Scott*, Civ. No. 25-2104-TDC, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025) (citations omitted). With this framing in mind, "multiple courts have reached the same conclusion that the six-month presumption is rebuttable." *Id.* at *5 (collecting cases); *see also Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (*Cruz Medina I*); *Abrego Garcia v. Noem*, No. 8:25-CV-02780-PX, --- F. Supp. 3d ---, 2025 WL 3545447, at *14 (D. Md. Dec. 11, 2025) ("But it is a presumption which can be rebutted where the petitioner demonstrates that removal is not reasonably foreseeable.").

---

detention. To the extent the Court expressed skepticism at the July hearing that the *Zadvydas* presumption is rebuttable, the Court may reconsider that position at any time prior to final judgment on all the claims. *See* Fed. R. Civ. P. 54(b). With the benefit of more caselaw on the question, the Court finds the *Zadvydas* presumption rebuttable for the reasons stated herein.

"Even within the presumptively constitutional detention period, whether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained." *Villanueva v. Tate*, Civ. No. H-25-3364, --- F. Supp. 3d ---, 2025 WL 2774610, at *10 (S.D. Tex. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 699). Were it otherwise, the Government could simply detain noncitizens who had been released on orders of supervision, release them at the five-month-twenty-nine-day mark, and then immediately re-detain them, starting the *Zadvydas* clock anew.

In plainer terms, *Zadvydas* did not announce a bright line rule that permits detention for at least six months. *See Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."); *Zavvar*, 2025 WL 2592543, at *5 ("Indeed, in *Zadvydas*, the Court noted that such presumptions are intended to 'guide lower court determinations,' without stating that they mandate a particular result or establish a bright-line rule." (quoting *Zadvydas*, 533 U.S. at 701)). Instead, "the *Zadvydas* standard is inherently dynamic" and a habeas petitioner's continued detention may become unjustified at a period short of that six-month mark. *Cruz Medina I*, 794 F. Supp. 3d at 370. "[I]f a detainee provides 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the government must respond with *evidence* sufficient to rebut that showing." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) (citing *Zadvydas*, 533 U.S. at 701) (emphasis added in *Munoz-Saucedo*). The "*Zadvydas* presumption . . . is rebuttable," and if Portela-Hernandez "'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397.

15

3. Process Required Before Removal

Before a noncitizen like Portela-Hernandez can be removed from the United States, the parties agree that some steps must occur to ensure that he is not removed to a country in violation of 8 U.S.C. § 1231(b)(3), which prohibits a noncitizen's removal to a country when his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Portela-Hernandez asserts that under constitutional guarantees of due process, he is entitled to a "notice and an opportunity to determine whether he merits withholding of removal or other protection" before he can be removed. ECF 39, at 5 ¶ 21. The Government contends that Portela-Hernandez has received all the process he is due, and thus his removal to Mexico is significantly likely in the immediately foreseeable future. Whether this is true thus turns on what process he is due.

> a. The D.V.D. *Litigation Does Not Preclude Review of Portela-Hernandez's Claim.*

The Government argues that because Portela-Hernandez is a member of the non-opt-out class in *D.V.D.*, this Court should not adjudicate his challenge to the process of his removal to a third country. ECF 40, at 9–13. And at the same time, the Government asserts that the Supreme Court's stay of the *D.V.D.* preliminary injunction resolved "any doubt about whether the March 30, 2025 Guidance and the procedures described therein that have been and are being provided to Petitioner withstand legal and constitutional scrutiny[.]" ECF 40, at 10. This stay decision, the Government contends, "squarely control[s]' in 'like cases'" (like this one). *Id.* (quoting *Trump v. Boyle*, 606 U.S. ---, 145 S. Ct. 2653, 2654 (2025)). The stay decision reads in its entirety:

> The application for stay presented to Justice JACKSON and by her referred to the Court is granted. The April 18, 2025, preliminary injunction of the United States District Court for the District of Massachusetts, case No. 25–cv–10676, is stayed pending the disposition of the appeal in the United States Court of Appeals for the First Circuit and disposition of a petition for a writ of certiorari, if such writ

> is timely sought. Should certiorari be denied, this stay shall terminate automatically.
> In the event certiorari is granted, the stay shall terminate upon the sending down of
> the judgment of the Court.

*Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025). Upon the Government's motion for

clarification after the *D.V.D.* district court had ordered remedial relief, the Supreme Court clarified

that its "June 23 order stayed the April 18 preliminary injunction in full. The May 21 remedial

order [could not then] be used to enforce an injunction that [the Supreme Court's] stay rendered

unenforceable." *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627 (2025). But the Supreme

Court offered no more insight into the basis for the stay. Without an explanation as to its reasoning,

the Government's proffered basis for the Supreme Court's ruling is conjecture. As the

Government notes, "[i]n its application, the government argued, *among other things*, that the

Guidance comported with the Constitution's due process requirements." ECF 40, at 11 (emphasis

added). It is possible that the Supreme Court's stay decision was based on one of these "other

things," which would mean that the constitutionality of the March 30, 2025 Guidance has not

actually been resolved and that this is not a "like case" foreclosing Portela-Hernandez's relief.

For example, the stay of the *D.V.D.* preliminary injunction may have been based on the

district court's grant of classwide injunctive relief. *See Garland v. Aleman Gonzalez*, 596 U.S.

543, 546 (2022) (holding that 8 U.S.C. § 1252(f)(1) "deprive[s] the District Courts of jurisdiction

to entertain [ ] requests for class-wide injunctive relief" as to the operation of the relevant

provisions of the INA). If so, then bringing an individual claim (as Portela-Hernandez has done)

would be the proper method the Supreme Court envisioned for bringing such challenges. *See id.*

at 550 ("The lower courts retain the authority to 'enjoin or restrain the operation of 'the relevant

statutory provisions 'with respect to the application of such provisions to an individual alien

against whom proceedings under such part have been initiated.'" (quoting 8 U.S.C. § 1252(f)(1)));

*cf. Nguyen v. Scott*, 796 F. Supp. 3d 703, 730 (W.D. Wash. 2025) (explaining that the Government's argument in the *D.V.D.* litigation that "there is a jurisdictional bar to classwide injunctive relief in that case" contradicts its argument in an individual habeas action that that the petitioner's "individual claim should be barred because his injunctive claims should be adjudicated as part of the *D.V.D.* class").

The Court recognizes that other district courts have declined to entertain claims brought by individual petitioners arguably covered by the *D.V.D.* class. *See, e.g.*, *Umanzor-Chavez v. Noem*, Civ. No. SAG-25-01634, 2025 WL 2467640, at *1 n.1 (D. Md. Aug. 27, 2025); *I.V.I. v. Baker*, Civ. No. JKB-25-1572, 2025 WL 1519449, at *2 (D. Md. May 27, 2025). But the Government has not pointed the Court to authority mandating abstention from considering Portela-Hernandez's claims. In its original motion to dismiss, the Government cites to *Horns v. Whalen*, 922 F.2d 835, 835 (4th Cir. 1991) (table op.), for the proposition that "in the prisoner context, that it is error to allow a prisoner to prosecute a separate action once his class has been certified.'" ECF 15, at 6. While it is true that the Fourth Circuit in that case upheld a district court's decision not to hear an individual claim duplicative of a class claim pending elsewhere, it did not find that the district court *must* have dismissed the individual claim on that basis.

One of the considerations articulated by the Fourth Circuit there was that the plaintiff's claims "would be adequately addressed in a pending class action." *Horns*, 922 F.2d 835, at *2 n.2. But abstaining from hearing Portela-Hernandez's challenge here "would effectively preclude [Portela-Hernandez] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved." *Sagastizado I*, 2025 WL 2957002, at *8. This Court agrees that it is "counterintuitive that non-opt-out class membership . . . could prevent individuals from making their own claims

for due process while that injunction is stayed on a class-wide basis," *id.*, especially given that, as

discussed above, the stay of the preliminary injunction may very well be due to the classwide

nature of the relief pursued in *D.V.D.*

> ### b. *Portela-Hernandez Has a Due Process Right to Immigration Judge Review of the Negative Fear Determination.*

The Court next turns to an evaluation of Portela-Hernandez's claim that due process entitles

him to immigration judge review of his negative fear determination.[10]  A *Mathews v. Eldridge*

analysis requires consideration of three factors: (1) "the private interest that will be affected by the

official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3)

"the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The private interest at issue is Portela-Hernandez's interest in not being removed to a

country where he would face persecution or torture, which § 1231(b)(3) does not permit.  He

asserts that he has previously been raped and kidnapped in Mexico. *See* ECF 39, at 6 ¶ 27. "That

is precisely the type of interest that courts consistently have held is significant enough to justify

procedural protections to ensure that individuals who are actually entitled to withholding of

---

[10] In *Castaneda*, the Fourth Circuit expressly assumed without deciding "that as-applied due process challenges to § 1231 detentions may proceed outside the *Zadvydas* framework when the alien presents, as a threshold matter, exceptional circumstances warranting that departure." 96 F.4th at 761. It did "not undertake a weighing of the *Mathews* factors," *id.* at 762 n.13, because the petitioner "ha[d] not shown exceptional circumstances warranting a departure from the *Zadvydas* framework [so h]is as-applied due process challenge to his § 1231 detention therefore fail[ed]," *id.* at 762. Here, the Court undertakes the *Mathews* analysis in conjunction with *Zadvydas*. First, exceptional circumstances exist here where Portela-Hernandez was granted withholding of removal, has lived freely in this country for years and complied with an order of supervision, has worked lawfully as a small business owner, and was detained for removal to a third country through a process he contends is unconstitutional. Further, a *Mathews* analysis is necessary to reach the *Zadvydas* question.

removal under § 1231(b)(3) or the Convention Against Torture receive such protection." *Cruz Medina II*, 2025 WL 2841488, at *6 (citing *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *Kossov v. INS*, 132 F.3d 405, 409 (7th Cir. 1998); *Sagastizado I*, 2025 WL 2957002, at *12; *D.V.D.*, 778 F. Supp. 3d at 388)); *see also Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) ("If aliens would face persecution or other mistreatment in the country designated under § 1231(b)(2), they have a number of available remedies: asylum, § 1158(b)(1); withholding of removal, § 1231(b)(3)(A); relief under an international agreement prohibiting torture, *see* 8 CFR §§ 208.16(c)(4), 208.17(a) (2004); and temporary protected status, 8 U.S.C. § 1254a(a)(1).").

"The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" are high. *See Mathews*, 424 U.S. at 335. "The Fifth Amendment requires that ICE provide a meaningful opportunity for petitioner's claim of fear to be heard. The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019) (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)); *see also Nguyen*, 796 F. Supp. 3d at 727 (finding that the petitioner had shown a likelihood of success on his claim that "he cannot be removed to a third country without sufficient notice and opportunity to be heard, and that ICE's current third-country removal policy violates due process").

"The Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation." *Cruz Medina II*, 2025 WL 2841488, at *7. In an analogous summary proceeding when a noncitizen faces reinstatement of a removal order, current regulations direct that an asylum officer conduct a

reasonable fear interview and that a negative fear determination is subject to immigration judge review. *See* 8 C.F.R. §§ 208.31(g), 1208.31(g). As Judge Abelson has explained:

> The government offers no articulable reason why there is any lesser risk of erroneous deprivation in this scenario than in scenarios where DHS regulations contemplated the potential risk of erroneous deprivation of a noncitizen's liberty interest and determined to mandate review by an immigration judge. While there remains a risk of erroneous deprivation following review by an immigration judge, this Court defers to DHS's own longstanding determination that similar circumstances call for providing [immigration judge] review to lessen the risk of erroneous deprivation of relief under the withholding statute or the Convention Against Torture.

*Cruz Medina II*, 2025 WL 2841488, at *7; *see also A.A.M. v. Andrews*, No. 1:25-CV-01514-DC-DMC (HC), 2025 WL 3485219, at *9 (E.D. Cal. Dec. 4, 2025) (finding that the lack of immigration judge review of a negative fear determination presented a high risk of erroneous deprivation because the petitioner would "not have the opportunity to present his fear-based claim to a neutral adjudicator for correction of USCIS's potentially erroneous determination" and "there would be no avenue for him to vindicate his rights in the United States" were he to be erroneously removed).

Finally, the third *Mathews* factor also weighs in Portela-Hernandez's favor. "Requiring [immigration judge] review in Petitioner's case provides significant but minimally burdensome procedural safeguards in the form of independent review by a subject-matter expert and the opportunity to receive a written explanation of a denial by an [immigration judge]." *Sagastizado I*, 2025 WL 2957002, at *12 (citation omitted). "Moreover, this procedure is already provided for in various other removal contexts where noncitizens are entitled to lesser due process rights . . . ." *Id.*

To the extent the Government argues that 8 U.S.C. § 1231(b) and 8 C.F.R. § 241.15(a) give "the Secretary . . . sole discretion to decide to remove a noncitizen to a third country," it must be noted that this statute and regulation govern how the Executive *designates* a country of removal.

21

They do not supplant § 1231(b)(3)'s prohibition on sending a noncitizen to a country where the Attorney General has determined he will be persecuted or tortured. Portela-Hernandez is not challenging the designation of Mexico as a country of removal, and he does not ask that this Court determine that he will be tortured or persecuted there. Rather, he asserts that he cannot be removed to that country until he has been afforded due process, and the failure to provide that process unconstitutionally prolongs his detention. 8 U.S.C. § 1231(b) and 8 C.F.R. § 241.15(a), therefore, do not pose an obstacle to Portela-Hernandez's habeas challenge. The Government's citation to *Munaf v. Geren*, 553 U.S. 674 (2008), does not change this conclusion. In that case, the Supreme Court rejected habeas petitioners' challenge to their transfer from U.S. military detention "within another sovereign's territory [Iraq] to that sovereign's government for criminal prosecution." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). In holding that the courts could not disturb the Executive's assessment as to the habeas petitioners' asserted possible torture upon transfer, the *Munaf* Court explained:

> The Judiciary is not suited to second-guess such determinations— determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area. *See* The Federalist No. 42, p. 279 (J. Cooke ed. 1961) (J. Madison) ("If we are to be one nation in any respect, it clearly ought to be in respect to other nations"). In contrast, the political branches are well situated to consider sensitive foreign policy issues, such as whether there is a serious prospect of torture at the hands of an ally, and what to do about it if there is.

*Id.* at 702. The same concerns of diplomacy and sovereignty are not at issue here. Immigration judge review of the negative fear determination would necessarily occur within the Executive branch, and the Court here does not weigh in on the probability of whether Portela-Hernandez will be persecuted or tortured in Mexico. The Court merely holds that constitutional due process

entitles Portela-Hernandez to review of that question by an official within the Executive, likely by an immigration judge, before he can be removed.[11]

In sum, Portela-Hernandez is entitled to immigration judge review of his negative fear determination as described in the regulations governing the analogous context. 8 C.F.R. §§ 208.31, 1208.31.

### 4. Portela-Hernandez's Detention Presents Prolonged and Indefinite Detention in Violation of his Due Process Rights Under *Zadvydas*.

Now that the Court has determined that Portela-Hernandez is constitutionally entitled to immigration judge review of his negative fear determination, it returns to the question of the reasonable foreseeability of Portela-Hernandez's removal. This evaluation is grounded by the *Zadvydas* Court's guidance that reasonableness of detention is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." 533 U.S. at 699.

Portela-Hernandez was detained on May 20, 2025. While his removal has been enjoined pending disposition of this case, *see* ECFs 10 and 35, Respondents have never been enjoined from taking steps in furtherance but just short of actual removal, *see* ECF 32, at 2. Despite repeated requests from Portela-Hernandez and his counsel for a reasonable fear interview, a prior court hearing, and requests from the Court as to the status of a reasonable fear interview, *see* ECFs 30 and 32, the interview apparently did not occur until the morning of November 7, 2025—somehow on the very same day and at nearly the same time that an evidentiary hearing was happening across

---

[11] While Portela-Hernandez has asserted that the process he has been afforded is constitutionally inadequate, the precise procedures he believes are required are not entirely clear. Without more, the Court will follow the procedures DHS has implemented in the analogous context of 8 C.F.R. §§ 208.31 and 1208.31.

the country in this case.[12]  *See* ECF 40-1 (third country screening notice).  Indeed, the testifying

witness at that hearing, Melanie White, the Assistant Field Office Director for Baltimore ICE, did

not receive the results of the interview until after the hearing had begun.  The Government's

decision to conduct the interview when it did necessarily precluded Portela-Hernandez's counsel

from participating in the interview—something the regulations concerning analogous process

---

[12] The Court notes the change in nomenclature from "reasonable fear interview" to "third country
screening."  At the beginning of this case, it appeared to the Court that all parties agreed a
"reasonable fear interview" would occur.  *See* ECF 9 (status call in which Government counsel
described his understanding that upon expressing a fear of removal to Mexico, an asylum officer
would conduct a reasonable fear interview with Portela-Hernandez and any negative determination
would be subject to review by an immigration judge); *see* ECF 31, at 1 (joint status report
explaining that as of October 6, 2025, "Petitioner ha[d] not received a reasonable fear interview"
but that "ICE ha[d] made the referral to USCIS to conduct a reasonable fear interview").  But at
the November 7 hearing, Melanie White, the Assistant Field Office Director for Baltimore ICE,
testified that a reasonable fear interview and third country screening were not the same, and that a
reasonable fear interview would not occur in this case.  She explained that in a third country
screening interview, the noncitizen would have the opportunity to raise concerns about torture or
persecution in the third country designated for removal and that no reasonable fear interview would
occur after that in a third country removal case.  While the difference between the two types of
interviews was never cleared up at the hearing, it is consistent with the testimony that the difference
concerns whether the country designated for removal is the country of origin or a third country.

It also appears that asylum officers apply different standards in third country screenings
versus reasonable fear interviews.  In the third country screening, the USCIS asylum officer
determined that Portela-Hernandez "did not establish that it is more likely than not that [he] will
be persecuted or tortured in Mexico." ECF 40-1.  According to the regulations, in the reasonable
fear interview process, the asylum officer determines whether there is a "reasonable possibility"
of persecution or torture in the designated country on account of the protected grounds.  *See* 8
C.F.R. § 208.31(c).  Once a "reasonable possibility" is established, the noncitizen's case is referred
to an immigration judge for withholding-only proceedings where the *immigration judge* will apply
the more-likely-than-not standard.  *See* 8 C.F.R. §§ 208.16(b), 1208.16(b); *cf. Perez Vasquez v.
Garland*, 4 F.4th 213, 221 n.7 (4th Cir. 2021) ("Whereas asylum applicants need only show a
reasonable possibility—as low as a ten percent chance—of persecution, withholding applicants
must demonstrate a greater-than-fifty-percent likelihood of persecution (i.e., more likely than
not)." (citations and internal quotation marks omitted)).

Portela-Hernandez suggests that this "heightened 'more likely than not' standard in
screening for withholding and CAT claims is insufficient." ECF 39, at 14 ¶ 67.  But he does not
appear to seek relief specifically related to this allegation. *See id.* at 15–16 (prayer for relief).

Case 1:25-cv-01633-BAH    Document 41    Filed 01/09/26    Page 25 of 27

expressly permit and what Portela-Hernandez purportedly demanded. *See* 8 C.F.R. § 208.31(c); ECF 39, at 4 ¶ 18 ("Despite Petitioner requesting counsel, ICE did not notify his attorney and continued the interview."); *see also id.* 14 ¶ 66 ("Coercing testimony out of a Petitioner while Respondents knew his lawyer was in an evidentiary hearing seeking to determine what Respondents had done is an affront to due process of law and should not be countenanced by this Court."). Regardless, the Government contends that this interview with an asylum officer (without requested counsel) is all the process that Portela-Hernandez is due. *See* ECF 40, at 13. Portela-Hernandez has good reason to believe his removal—only permissible after immigration judge review of a negative fear determination—is not reasonably foreseeable.

The Court is, of course, mindful of the Fourth Circuit's warning not to "read[] *Zadvydas* too broadly." *Castaneda*, 95 F.4th at 756. In *Castaneda*, the petitioner, a citizen of El Salvador, had been previously ordered removed to El Salvador. *See id.* at 752. The petitioner reentered the country some years later and was apprehended in Maryland. *See id.* at 753. After his prior removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), the petitioner requested a reasonable fear interview based on his potential re-removal to El Salvador. *Id.* In 2019, after an asylum officer found his fear reasonable, his case was referred to an immigration judge to determine whether he should be granted withholding of removal to El Salvador. *Id.* The petitioner was denied bond and his case bounced between the immigration judge and Board of Immigration Appeals ("BIA"), with the immigration judge twice granting relief under CAT and the BIA twice remanding that determination. *Id.* at 753–54. After an immigration judge *denied* the petitioner CAT relief, the petitioner appealed, and the BIA remanded the case a third time in August 2023. *Id.* at 754. The petitioner filed his habeas petition before the immigration judge's ruling after the third remand. *Id.* The Fourth Circuit held that the noncitizen petitioner's years' long detention did not violate

25

due process under *Zadvydas* because the petitioner "[was] being detained pending the completion of withholding-only proceedings that he voluntarily initiated" and that had "a definite ending point." *Id.* at 757. "[O]ngoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of an alien's removal in the future." *Id.* at 758.

The circumstances here are distinguishable from those in *Castaneda.* There is no "definite ending point" here and withholding-only proceedings do not stand alone as the Government maintains that Portela-Hernandez is not entitled to withholding-only proceedings and will not provide them. Simply put, the Government cannot remove Portela-Hernandez until all the process the Constitution requires has been provided. Without immigration judge review of the negative fear finding, the Government has not afforded Portela-Hernandez all the process he is constitutionally due. The Government has not provided Portela-Hernandez immigration judge review because it does not believe the Constitution requires it and will not provide this review. While the Government is certainly entitled to take this position, the Court finds otherwise and holds that immigration judge review is necessary to meet the minimum requirements of constitutional due process before Portela-Hernandez can be removed to Mexico (or any other yet-to-be-designated country of removal). In taking this position and not providing review of the asylum officer's decision, it follows that removal cannot be reasonably foreseeable as there is no end to Portela-Hernandez's detention in the reasonably foreseeable future because he will not receive the process he is due. Stated differently, Respondents cannot overcome *Zadvydas*'s due process requirements by skipping other procedures that are constitutionally due.[13]  The record

---

[13] Portela-Hernandez also asserts that "ICE's attempted removal would violate non-refoulement principles." ECF 39, at 10 ¶ 50. The Government argues that "Petitioner's assertion that the country to which he is currently designated to be removed may potentially refoul him does not lead to the conclusion that there exists no significant likelihood of his removal in the reasonably foreseeable future or that he should be released from detention on this basis." ECF 40, at 5. On

before the Court, therefore, indicates that Portela-Hernandez faces "indefinite and potentially permanent detention." *See Zadvydas*, 533 U.S. at 696; *Castaneda*, 95 F.4th at 757 (citing *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022)). That is not constitutionally permissible under *Zadvydas*, and thus Portela-Hernandez must be released. *See Sagastizado v. Noem*, No. 5:25-CV-00104, 2025 WL 3760317, at *10 (S.D. Tex. Nov. 14, 2025) (*Sagastizado II*) (finding removal not likely to occur in reasonably foreseeable future after the Court had previously found petitioner entitled to immigration judge review of negative fear finding and the Government had failed to facilitate that immigration judge review).[14]

## V.    CONCLUSION

For these reasons, Portela-Hernandez's second amended petition for writ of habeas corpus, ECF 39, is GRANTED. Respondents' motion to dismiss, ECF 40, is DENIED.[15]

An implementing order follows.

Dated: January 9, 2026

/s/
Brendan A. Hurson
United States District Judge

---

this record and the limited arguments submitted by the parties, the Court cannot find a basis for habeas relief based on potential refoulment. In any case, Petitioner appears to assert that individualized review of his fear claims before an immigration judge would remedy this harm. *See id.* at 10–13 ¶¶ 47–62. As the Court finds that Petitioner is due immigration judge review of his negative fear determination, the Court need not consider Petitioner's non-refoulment assertions.

[14] The Government is, of course, free to pursue Portela-Hernandez's removal to Mexico (or another third country) while he is released, but only after affording him constitutionally required due process.

[15] Respondents' earlier filed motion to dismiss, ECF 15, is denied as moot.